IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                          CR. No. 12-1082 JAP

JONATHON HADDAD,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Johathon Haddad seeks an order requiring the United States to disclose the identity of a confidential informant (CI) who provided information to law enforcement that was used to investigate the crimes with which Defendant is charged. *See* AMENDED MOTION FOR DISCLOSURE OF IDENTITY OF AND INFORMATION ABOUT CONFIDENTIAL INFORMANT (Doc. No. 31) filed on August 23, 2012 (the Motion).[1] Information from the CI was also used to obtain a search warrant of Defendant's apartment and vehicle. During the search, law enforcement discovered several firearms, cocaine, cocaine base or crack cocaine, and marijuana. The Court concludes that Defendant has failed to meet his burden to show that the identity of the CI would be relevant and helpful to his defense, or that it would be essential to a fair determination of his guilt or innocence. The Court finds that Defendant's interests in discovering the CI's identity do not outweigh the public interest in protecting the confidential

---

[1] In ruling on the Motion, the Court has also considered UNITED STATE'S RESPONSE TO DEFENDANT'S AMENDED MOTION FOR DISCLOSURE OF IDENTITY OF CONFIDENTIAL INFORMANT (Doc. No. 32); and MR. HADDAD'S REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION FOR DISCLOSURE OF IDENTITY OF AND INFORMATION ABOUT CONFIDENTIAL INFORMANT (Doc. No. 35).

flow of information necessary for effective law enforcement.

    I.  BACKGROUND

In the Spring of 2012, Bernalillo County Sheriff's Detective Nick Huffmyer met with the CI to obtain information about drug dealers in the Albuquerque area.  The CI informed the detective that he thought Defendant was selling cocaine, crack cocaine, and marijuana.  Detective Huffmyer asked the CI to set up a purchase of cocaine from Defendant.  The CI called Defendant using a speaker phone, and while Detective Huffmyer listened, the CI agreed to purchase one-half ounce of cocaine powder from Defendant.  Prior to the purchase, Detective Huffmyer searched the CI and found no controlled substances or cash on the CI's person.  The CI and Detective Huffmyer went to the purchase location.  Soon thereafter, Defendant arrived in a BMW automobile.  Detective Huffmyer positioned himself so he was able to observe the controlled purchase: Defendant exited the BMW, walked to the CI, and the two engaged in a hand-to-hand transaction.  Defendant and the CI spoke for a moment before Defendant returned to his BMW.  After the purchase, Detective Huffmyer searched the CI and found cocaine powder that the CI allegedly had purchased from Defendant.  Defendant drove to an apartment at 1700 Coal SW, Albuquerque, New Mexico, which Detective Huffmyer later learned was Defendant's residence.  Detective Huffmyer also learned that Defendant seemed to have no legitimate employment.

In the weeks following the controlled purchase, Detective Huffmyer conducted surveillance on the activities at the apartment located at 1700 Coal SW.  Many visitors were observed arriving at the apartment and leaving less than five minutes later, carrying nothing in or out of the apartment.  Detective Huffmyer knew from his training and experience that this activity is indicative of illegal drug trafficking.

Detective Huffmyer met again with the CI to arrange a second undercover purchase. Detective Huffmyer searched the CI and found no controlled substances or cash on the CI's person. The CI placed a call to Defendant over a speaker phone and arranged to purchase cocaine, while Detective Huffmyer listened. Detective Huffmyer and the CI went to the purchase location where Defendant was waiting in the BMW. The CI joined Defendant in the BMW while Detective Huffmyer watched a hand-to-hand transaction through the windshield. After Defendant left the location, Detective Huffmyer searched the CI and found cocaine powder allegedly purchased from Defendant.

On April 9, 2012, Detective Huffmyer obtained a search warrant from New Mexico State District Judge Reed Sheppard authorizing the search of Defendant's apartment and Defendant's vehicle. On the day of the search, Defendant was standing outside the apartment holding a large Fedex box. When Detective Huffmyer arrived to execute the search warrant and announced that he was a police officer, Defendant immediately put the Fedex box into his vehicle. Detective Huffmyer informed Defendant that the warrant authorized a search of his apartment and his vehicle. The search of the apartment revealed 500 grams or more of cocaine and 28 grams or more of crack cocaine. Defendant admitted everything in the apartment belonged to him. The search of the BMW yielded 20.7 ounces of marijuana inside the Fedex box. The Fedex shipping label on the box was addressed to Amanda Friedman, 115 Innis Avenue Apt. B, Poughkeepsie, NY from a sender named Jose Friedman at 126 Stanford Place, Albuquerque, New Mexico. Firearms were also discovered in the search. In addition to charges of illegal drug possession with the intent to distribute, Defendant was indicted for possession of firearms in furtherance of drug trafficking crimes: a Starfire semi-automatic handgun; a Yugoslavian semi-automatic rifle; a Hipoint semi-automatic rifle; a Cobra .380 caliber semi-automatic handgun; and a Springfield

semi-automatic handgun.  (Doc. No. 12.)

   II.  LEGAL STANDARD

The government has a privilege to withhold from disclosure the identity of confidential informants.  *Rovario v. United States*, 353 U.S. 53, 59  (1957).   In upholding the privilege, courts recognize "the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials" and, courts recognize that by preserving their anonymity, informants are encouraged to make reports of crimes.  *Id.*  However, the scope of the privilege is limited.  *Id.* at 60.  If "the disclosure of an informant's identity, or of the contents of his communications, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.  To determine whether the privilege applies, courts must balance the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense.  *Id.* at 62.  Courts should consider the particular circumstances of the case, including the crime charged, the possible defenses, and the possible significance of the informer's testimony.  *See id.* (ruling that the district court erred by denying defendant's right to disclosure of the informer's identity where informer was sole participant, other than the accused, in transaction and where another witness had testified that the informer denied having seen the accused).

A defendant seeking disclosure of an informant's identity has the burden to show a need for the disclosure that outweighs the government's interest in confidentiality of its informants. *United States. v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997).  Mere speculation about the usefulness of an informant's testimony, however, is insufficient to compel disclosure.  *United States v. Mendoza-Salgado*, 964 F.2d 993, 1001 (10th Cir. 1991).  When a defendant fails to show that an informant can help the defense, the government's interest in keeping secret an

informant's identity must prevail over the defendant's right of disclosure.  *United States v. Martinez*, 979 F.2d 1424, 1429 (10th Cir. 1992).  To determine whether to order disclosure, a court may, but is not required to, order an *in camera* examination of the informant.  *Id.* at 1426 (stating that an *in camera* hearing can be used to determine whether the informant's testimony would aid the defense).

Courts have ordered the disclosure of an informant's identity where a defendant shows that the informant's probable testimony would have a direct relationship to the defendant's asserted defense.  In *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990), the Tenth Circuit Court of Appeals reversed a district court's denial of a motion for disclosure concluding that the defendant had met his burden to show that the informant would provide useful testimony about who owned the marijuana found the defendant's place of work and whether the defendant was involved in the drug operations.  The Tenth Circuit ruled it was error for the district court to conclude that the informant was not an active participant in the crime because the district court failed to state its basis for that conclusion.  The Tenth Circuit also determined the defendant showed that the informant's testimony could support the defendant's argument that, although he worked at the location where over 100 pounds of  marijuana was found, the defendant was not involved in the drug operation and was simply in the wrong place at the wrong time. *Id*.  The Tenth Circuit remanded with instructions to the district court to hold an *in camera* hearing to determine whether this would have been the informant's testimony.  *Id.* at 569.  While an informant's identity should be disclosed if the informant has information that is relevant to the defendant's defense, disclosure is not necessary if the informant's information is merely cumulative of other evidence or if the informant did not participate in or witness the crime charged.  *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v.*

*Mendoza-Salgado*, 964 F.2d at 1000-01.

    III.  DISCUSSION

        A.  Timeliness of the Motion

At Defendant's arraignment hearing held on May 18, 2012, Chief Magistrate Judge Karen B. Molzen ordered counsel to file pretrial motions by June 7, 2012.  The Motion was filed on August 23, 2012.  Defendant asks the Court to consider the Motion as timely even though Defendant filed the Motion after the deadline.  In the Motion, counsel for the Defendant states that he conferred with Assistant United States Attorney, Norman Cairns, who indicated that the government did not object to the timeliness of the Motion.  In consideration of the lack of objection from the United States and in the Court's discretion, the Court will not deny the Motion as untimely. Fed. R. Crim. P. 16(d) (stating that at any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief).

        B.  Information Requested By Defendant

In addition to the name and address of the CI, Defendant asks for disclosure of an extensive amount of information related to the CI: 1) all state and federal criminal cases in which the CI was used as an informant; 2) the identity of all cases in which the CI testified as to the CI's prior criminal history and as to payments provided to the CI by the government; 3) all documents detailing monies paid to the CI or his family in this and other cases; 4) any promises of immunity or leniency made to the CI or to his family in exchange for his cooperation; 5) all documents detailing criminal activities of the CI for which the government has agreed not to prosecute; 6) any state or federal records reflecting arrests, prosecution, and conviction of the CI for crimes; 7) information revealing any misconduct by the CI in the performance of the CI's duties as an informant; 8) information about misconduct by the CI that reflects the CI's character

for truthfulness; 9) all assets obtained by the CI in connection with legal and illegal activities during the previous ten years; 10) all personnel files kept by the government reflecting the CI's narcotic or alcohol use ; 11) all incarceration records pertaining to the CI; and 12) all files reflecting the CI's employment history, education, military history, marital history, and/or involvement in civil legal actions.  (Am. Mot. 3-7.)

### C.  The CI Will Not Testify At Trial

The United States asserts that it will not call the CI as a witness at trial; therefore, Defendant cannot demonstrate the need for information related to the CI's character for truthfulness or information that could be used to impeach the CI's testimony. *Cf. Giglio v. United States*, 405 U.S. 150, 154 (1972) (requiring the government to disclose material evidence that a defendant may use to impeach government witnesses).  However, the United States asserts that the it will proffer evidence of the controlled purchases through Detective Huffmyer to prove Defendant's intent to distribute the cocaine found in Defendant's apartment and vehicle.  The United States asserts that it will offer Detective Huffmyer's testimony that he received information from the CI and that the information prompted an investigation of Defendant. Detective Huffmyer will also testify that he set up two controlled purchases using the CI, and Detective Huffmyer will describe the specific procedures used to perform the controlled purchases i.e., the search of the CI's person prior to the purchases, Detective Huffmyer's observations of the hand-to-hand transactions, and the subsequent search of the CI and discovery of cocaine allegedly purchased from Defendant.

### D.  The Search Warrant

Defendant asserts that since Detective Huffmyer was not present with the CI at the alleged hand-to-hand purchases but merely watched the transactions from a distance, the

Defendant must be able to assess the reliability of the CI to discredit or confirm the circumstances of each transaction.  The United States avers that the CI's identity is not useful even for this purpose because the United States will not call the CI to testify about the alleged transactions.  The United States also contends that since Defendant has not been charged with possession with intent to distribute the cocaine that the CI allegedly purchased in those transactions, information about the transactions from the CI is not connected with the charged crimes.  The United States maintains Defendant cannot show that information from the CI would be relevant to a defense against the crimes charged in the indictment: the possession of illegal drugs and firearms found in Defendant's apartment and vehicle during a search at which the CI was not present.

     Defendant counters that although the United States will not proffer the CI's testimony at trial, the United States used the information from the CI and the controlled purchases to obtain a search warrant for Defendant's apartment and vehicle.  Defendant contends that he needs information about the CI to attack the constitutionality of the search warrant and possibly suppress the evidence found in the search.  Under *Franks v. Delaware*, a defendant may request an evidentiary hearing regarding the veracity of a search warrant affidavit.  To be entitled to a *Franks* hearing, however, a defendant must show by an offer of proof that the officer who prepared the affidavit to support the search warrant made false statements that were necessary to a finding of probable cause.  According to the Supreme Court in *Franks*:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today *is only that of the affiant, not of any nongovernmental informant*. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. at 171-72 (emphasis added).

The United States correctly asserts that *Franks* specifically prohibits a Defendant, who challenges a search warrant, from attacking the veracity of the CI. Thus, Defendant may only attack the basis for Detective Huffmyer's affidavit testimony that was used to obtain a search warrant. In addition, Detective Huffmyer corroborated the information obtained from the CI about Defendant's alleged drug trafficking, by using a specific procedure to set up the controlled purchases and by witnessing the controlled drug purchases. Detective Huffmyer then watched Defendant's apartment and observed numerous individuals entering Defendant's apartment and staying only a few minutes before exiting the apartment. This type of activity is indicative of drug trafficking and can corroborate information from an informant that drug trafficking was taking place at a particular location. *See United States v. Artez*, 389 F.3d 1106, 111-141 (10th Cir. 2004) (upholding search warrant based on informant's tip corroborated by an officer's surveillance of the residence and by controlled purchases).

In *United States v. Nelson*, 450 F.3d 1201 (10th Cir. 2006), the Tenth Circuit Court of Appeals upheld the denial of a *Franks* hearing to attack an affidavit supporting a search warrant, which contained a description of a controlled purchase following the same protocol employed by

Detective Huffmyer. *Id.* at 1214. The Tenth Circuit Court of Appeals stated, "[s]o long as these common formalities are observed to a substantial degree, the corroborative value of such a controlled purchase is not significantly diminished by the type of background facts alleged here regarding the informant's veracity or credibility (such as the informant's criminal record, drug use, or history of mental illness)." *Id.* The *Nelson* court concluded that in light of procedures used in controlled purchases, impeachment of the CI's credibility is minimally relevant. In this case, as in *Nelson* and *Artez*, Defendant has failed to convince the Court that he needs to know the identity of the CI to attack the validity of the search warrant.

      E. *United States v. Cruz*

The United States points out a recent case in which the Tenth Circuit Court of Appeals upheld the denial of a motion to disclose a CI's identity under a fact pattern similar to this case. *United States v. Cruz*, 680 F.3d 1261 (10th Cir. 2012). In *Cruz*, the defendant was charged with possession with intent to distribute methamphetamine, which was discovered in the defendant's bedroom during the execution of a search warrant of a residence. *United States v. Cruz*, Case No. 10 CR 1178 LH, MEMORANDUM OPINION AND ORDER (Doc. No. 46) at 8. The search warrant was based on information obtained by a CI that Cruz sold methamphetamine from the residence and that Cruz drove a blue Dodge Durango. *Id.* at 2. Based on this information, the detective organized surveillance of the residence. During the surveillance, officers observed a blue Dodge Durango parked at the residence and also observed individuals enter the house and leave approximately 5-10 minutes later, which is activity consistent with drug trafficking. (*Id.* 2.) The CI identified Cruz from a photo taken by law enforcement of a Hispanic male driving the Dodge Durango. (*Id.*) Subsequently, the detective set up a controlled purchase of methamphetamine using the CI and employed the same procedures that Detective

Huffmyer used in this case.

As Defendant argues here, Mr. Cruz argued that the CI's identity and testimony would be necessary to refute the validity of the search warrant. Mr. Cruz claimed he needed to know if the CI was a criminal, if the CI cooperated in an attempt to obtain more favorable treatment by law enforcement, and if the CI may have been a competitor who harbored ill will against Defendant. (*Id.* at 3.) The district court in *Cruz* was not convinced by these arguments and noted that the CI was not present at the search, and although the CI was the only participant in the controlled purchase, the United States did not intend to call the CI as a witness at trial. (*Id.* at 4-6.) The district court concluded that given the fact that the CI would not be a witness at trial, "Defendant's general requests for information on the CI thus amount to nothing more than mere speculation as to its usefulness to his defense." *Id.* at 8.

At Cruz's trial, the United States did not offer the CI's testimony concerning the defendant's presence or absence at the house at the time of the controlled purchase; however, the United States was allowed to present evidence of the controlled purchase, through the testimony of officers who participated in the controlled purchase, to prove the defendant's intent to distribute narcotics. 680 F.3d at 1263 (noting that evidence of the controlled buy supported the jury's finding of intent); *See also* Case No. 10 CR 1178 LH, Transcript of Trial 94:14-98:12 (Sept. 20, 2010) (testimony of officer about preparation of informant and observations of informant entering defendant's house with money provided by officer and exiting the house with contraband).

On appeal, Cruz argued that he was entitled to question the informant in order to contradict the officer who testified that he observed the transaction from afar. 680 F.3d at 1262. The Tenth Circuit Court of Appeals, however, rejected this argument and noted that the

11

controlled buy was not the basis of the indictment for possession with intent to distribute methamphetamine, though it did support the jury finding of intent—alongside evidence of "the . . . quantity of the drug, $1,000 cash in a dresser, house traffic consistent with dealing, [and] Mr. Cruz's apparent nonuse of the drug." *Id.* at 1263.  Second, the Tenth Circuit found significant that the district court engaged in the requisite balancing of the government's interest in protecting the CI's identity with the defendant's need for the evidence, without an *in camera* hearing.  *Id.*  Third, the Tenth Circuit agreed with the district court's finding that the informant's testimony would probably have been inculpatory, not exculpatory, as to Mr. Cruz.  *Id.*

In this case, as in *Cruz*, the controlled drug purchases were not the basis for the indictment against Defendant Haddad, but were corroborating evidence used to support a search warrant for Defendant's apartment and vehicle.  In addition, the United States will not offer the CI as a witness, but the United States intends to proffer Detective Huffmyer's testimony describing the controlled purchases and his observations to prove Defendant's intent to distribute illegal drugs.  Thus, the Defendant's request to have access to extensive information about the CI is based on speculation as to its usefulness to his defense.

The Court "must balance the public interest in protecting the flow of information in a manner necessary for effective law enforcement against the Defendant's right to prepare his defense." *Sinclair*, 109 F.3d at 1538.  Based on the circumstances presented in this case, the Court finds that the Defendant has not met his burden to show that the disclosure of the CI's identity would be helpful enough to outweigh the United States' interest in maintaining the anonymity of the CI and the public's interest in the unimpeded flow of information to law enforcement.  Additionally, the CI's identity would not be helpful to attack the validity of the search warrant because when an informant's information is corroborated, "there is no need to

establish the veracity of the informant." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).  Information from an informant may be corroborated through surveillance of a location known as a drug trafficking location and by a carefully executed controlled purchase involving the suspect.  *Artez*, 389 F.3d at 1111.  *See also Nelson*, 450 F.3d at 1214 (finding that a controlled purchases observed by officers who maintained proper procedure to ensure reliability, undermined the usefulness of negative information regarding the CI's credibility and would not change a probable cause determination).

    IT IS ORDERED that the AMENDED MOTION FOR DISCLOSURE OF IDENTITY OF AND INFORMATION ABOUT CONFIDENTIAL INFORMANT (Doc. No. 31) is denied.

                                                 */s/ James A. Parker*
                               SENIOR UNITED STATES DISTRICT JUDGE